## AMERICAN STATE BANK, MINNEAPOLIS, BY J. N. PEYTON, v. ARTHUR L. JONES.[1]

November 20, 1931.

No. 28,666.

*George T. Simpson,* for appellant.
*D. F. Nordstrom,* for respondent.

OLSEN, J.

Defendant appeals from an order sustaining a demurrer to his answer.

The action is brought by the commissioner of banks of this state to recover an assessment levied by him against the defendant as a stockholder of an insolvent bank. The action is brought under

[1]Reported in 239 N. W. 144.

L. 1927, p. 376, c. 254, to enforce the stockholder's constitutional double liability.

As defenses to the action defendant alleges that L. 1909, p. 191, c. 179, now G. S. 1923 (2 Mason, 1927) §§ 7688, 7689, as amended (L. 1927, p. 198, c. 127) is unconstitutional and void under Minn. Const. art. 3, § 1, as being an attempt to delegate and confer judicial power on the commissioner of banks, and that these sections are unconstitutional and void under Minn. Const. art. 1, § 7, and under U. S. Const. amend. 14, as an attempt to authorize the taking of private property without due process of law.

The two sections challenged are a part of our laws regulating and defining the powers and duties of the commissioner of banks in taking over and liquidating state banks which he finds are insolvent or unsafe or have violated their charters or the banking laws of the state.

Do these sections attempt to confer judicial powers and duties upon the commissioner of banks? Art. 3, § 1, of the state constitution, provides:

"The powers of the government shall be divided into three distinct departments, the legislative, executive, and judicial; and no person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others, except in the instances expressly provided in this constitution."

Art. 6, § 1, of the constitution, vests the judicial power of the state in the courts.

The question arises as to what is the judicial power of the state, vested exclusively in the courts, under these constitutional provisions.

The commissioner of banks is an administrative officer of the executive department of the state. He is given power to ascertain, in the first instance, without notice or hearing, whether in fact the bank is insolvent or unsafe or has violated its charter or the state laws governing banks. For that purpose he is authorized to examine the books, records, and business of the bank. He is not re-

quired to make any formal decision, or findings. If he concludes that one or more of the causes stated for taking possession of the bank exist, he takes it over for liquidation. If the bank feels aggrieved, it may apply to the district court to enjoin further proceedings and have a trial on the merits of the right of the commissioner to take possession and liquidate its business. As said in the case of Main v. Schroeder, 171 Minn. 329, 330, 214 N. W. 664, 665, in speaking of similar powers of the comptroller of the currency, relating to national banks, these powers "are, in their nature or character, judicial." That does not necessarily make them judicial powers within the meaning of the constitutional provision quoted. Considering the entire law relating to the powers of the commissioner, and relating to banks and banking, it seems clear that the powers conferred are administrative rather than judicial. Executive officers are constantly required to pass judgment upon questions of fact arising in the daily performance of their duties and to act thereon, but that does not amount to the exercise of judicial powers. When a bank applies for a certificate to authorize it to transact business, the commissioner must pass judgment upon the facts as to whether the bank has complied with the law in the matter of organization and capital and is qualified to transact business. In many other matters he is required to ascertain and pass judgment on the facts and to act thereon. The constitutional provision is not meant to apply to such transactions; otherwise executive officers would be practically helpless. Judicial power is not involved. At most, such determinations by an executive officer, while in a sense judicial, are but administrative acts requiring the exercise of common sense judgment. Such acts are sometimes characterized as quasi judicial, but not as constituting an exercise of judicial power.

It must be borne in mind that banks are a distinct class of corporations, charged with a public interest and subject to strict supervision by the executive department of the state.

The meaning and application of the term "judicial power" contained in the federal constitution and in state constitutions, vest-

ing such power exclusively in the courts, has been considered in many cases. State ex rel. Bd. of Co. Commrs. v. Dunn, 86 Minn. 301, 90 N. W. 772; Hunstiger v. Kilian, 130 Minn. 474, 538, 153 N. W. 869, 1095; U. S. v. Ferreira, 13 How. 40, 14 L. ed. 42; Den ex dem. Murray v. Hoboken L. & I. Co. 18 How. 272, 15 L. ed. 372; In re Sanborn, 148 U. S. 222, 13 S. Ct. 577, 37 L. ed. 429; Hinsdale County v. Mineral County, 9 Colo. App. 368, 48 P. 675, 679; Champion v. Board of Co. Commrs. 5 Dak. Ter. 416, 429, 41 N. W. 739; State v. LeClair, 86 Me. 522, 30 A. 7; State v. Hathaway, 115 Mo. 36, 48, 21 S. W. 1081, 1084; U. S. v. Smith, 4 N. J. L. 37; People ex rel. Armstrong v. Murphy, 65 App. Div. 126, 72 N. Y. S. 475; Cameron v. Parker, 2 Okl. 277, 38 P. 14; State ex rel. Mills v. McNutt, 87 Wis. 277, 281, 58 N. W. 389, 390; 4 Wd. & Phr. (1 ser.) pp. 3860, 3861. The holdings vary more or less, depending on the situation wherein the question arose.

As gathered from these and other cases, the power of administrative and executive officers of the government to hear and determine many matters more or less directly affecting public or private rights, not being in the nature of a suit or of an action between the parties, is not the exercise of judicial power, within the meaning of these constitutional provisions.

The question whether judicial power was conferred on the comptroller of the currency by the acts of congress empowering him to take possession of and liquidate national banks and assess their stockholders was raised in Bushnell v. Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. ed. 598. The court briefly disposed of the matter, holding that its prior decisions, therein cited, affirming the validity of diverse acts of the comptroller and his agents in the matter of closing and liquidating national banks, were decisive of the question. The decision is a direct holding that judicial power is not exercised by the comptroller in the closing and liquidation of national banks or in assessing the stockholders thereof; that the acts of congress in question do not attempt to vest judicial power in such officer.

Our laws in reference to the liquidation of state banks are practically copied from these federal laws, and it is conceded that so

502

far as this question is concerned there is no material difference between them. Defendant seeks to distinguish the federal cases by calling attention to the fact that the federal constitution contains no express provision prohibiting the exercise of judicial power by a person or persons belonging to other than the judicial department. But the federal constitution, like our own, divides the government into three separate departments, the executive, the legislative, and the judicial. It vests all the judicial power of the United States in the federal courts, except the limited judicial powers vested in congress in the matter of impeachment, punishing its own members, etc. or in the executive department by constitutional provisions. U. S. Const. art. III, §§ 1 and 2.

The Federal Supreme Court has repeatedly held that under the constitution all judicial power of the United States is vested in its courts, with the limited exceptions noted, and that neither congress nor the executive department has any such power, except in the few instances where such power is expressly granted by constitution. So far as national banks are concerned, there is no grant of judicial power either to congress or to the executive department. Union Pac. R. Co. v. U. S. 99 U. S. 700, 25 L. ed. 496; Kilbourn v. Thompson, 103 U. S. 168, 26 L. ed. 377; Bushnell v. Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. ed. 598.

The Bushnell case, 164 U. S. 684, 17 S. Ct. 209, 41 L. ed. 598, is therefore very much in point here, and we follow it in holding that our statutes, here challenged, do not attempt to confer judicial power upon the commissioner of banks.

█ Does this law attempt to deprive this defendant of property without due process of law? It is difficult to see how the taking over of the property of the bank deprives him of any property. He had no title to or right to the possession of any property owned by the bank. The only interest a stockholder has in such property would seem to be his interest in any surplus of the bank's property over and above what is required to pay its depositors and creditors. If the bank is insolvent, the stockholder has no interest except to have the property liquidated and applied on the debts

of the bank. Should there perchance be more property than necessary for that purpose, the law provides for the return of the surplus to the stockholders. Quite clearly the state has and should have the power to designate one of its officers to liquidate state banks.

Even if the stockholder is entitled to hearing, we think opportunity is not denied. G. S. 1923 (2 Mason, 1927) § 7689, before referred to, provides that whenever any bank is taken over by the commissioner, the bank may within ten days apply to the proper court to enjoin further proceedings and to have a hearing and present evidence, and have the court determine on the merits whether the commissioner was authorized and justified in closing the bank. This right in terms is given to the bank. But the bank, while a legal entity and legal owner of its property, is composed of its stockholders and officers. The word "bank" in this statute need not be construed strictly. If a stockholder of a bank is aggrieved and the officers of the bank fail or refuse to act, it would seem reasonable that, acting not for himself individually but on behalf of all the stockholders, he could obtain the same relief from the court as if the bank had acted by its officers.

The time given is short; but, as already noted, public interest is involved, and there is reason for prompt action. The power to legislate in reference to the business of banks is often based on the police power of the state. Noble State Bank v. Haskell, 219 U. S. 104, 31 S. Ct. 186, 55 L. ed. 112, 32 L.R.A.(N.S.) 1062, Ann. Cas. 1912A, 487.

In Hoff v. First State Bank, 174 Minn. 36, 218 N. W. 238, we said that the commissioner, in taking over and liquidating state banks, represents and acts for the bank, its stockholders, and all of its creditors. If so, he is but an agency designated by law to represent and act for the bank and its stockholders.

■ L. 1927, p. 376, c. 254, is now a part of the law governing the commissioner of banks in the matter of liquidating state banks. It is not referred to in defendant's answer or in his brief, but should be briefly considered on the questions presented. This act provides for the levying of an assessment against the stockholders

by the commissioner and for notice thereof to all stockholders within ten days. It provides that any stockholder may within 20 days after service of notice of the assessment serve a notice upon the commissioner in the nature of a notice of appeal to the district court; and, upon filing such notice, with proof of service, with the clerk of the court, the district court shall hear the matter de novo. All questions raised by the stockholder would seem to be open for determination on the merits on such appeal. The act further provides that in all other respects the stockholders shall have and retain all defenses that they now have in case an action is brought to enforce payment of the assessment. The assessment levied by the commissioner is not a judgment and can be enforced by him only by bringing suit thereon in district court. Reading this chapter of L. 1927 in connection with G. S. 1923 (2 Mason, 1927) §§ 7688, 7689, the rights of the stockholder appear sufficiently safeguarded.

Order affirmed.